UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TL GOODSON LLC,<br><br>               Plaintiff,<br><br>v.<br><br>SOUTHERN-OWNERS INSURANCE COMPANY; and AUTO-OWNERS INSURANCE COMPANY,<br><br>               Defendants. | Civil Case No. |

COMES NOW Plaintiff TL GOODSON LLC, and brings this Complaint seeking declaratory judgment against Defendants SOUTHERN-OWNERS INSURANCE COMPANY and AUTO-OWNERS INSURANCE COMPANY, and alleges as follows:

## PARTIES

1. At all relevant times, Plaintiff TL Goodson LLC ("TL Goodson") is a Limited Liability Company authorized to do business in the State of Florida, and located at 1 New Market Street, Cantonment, FL 32533.

2. Defendant Southern-Owners Insurance Company ("Southern-Owners") is a Michigan Corporation authorized to do business in the State of

Florida, with headquarters located at 6101 Anacapri Boulevard, Lansing, MI 48917.

3. Defendant Auto-Owners Insurance Company ("Auto-Owners") is a Michigan Corporation authorized to do business in the State of Florida, with headquarters located at 6101 Anacapri Boulevard, Lansing, MI 48917

4. At all relevant times, Southern-Owners and Auto-Owners (collectively "Defendants") are corporations doing business in the State of Florida. Defendants are authorized to write, sell, and issue insurance policies providing property coverage in Florida. Defendants conducted and transacted business in the state of Florida through the writing, selling, and issuing of insurance policies, and the basis of this suit arises out of such conduct.

## JURISDICTION AND VENUE

5. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiff is a limited liability company with its principal place of business in Florida. Defendants are both Michigan corporations with their principal place of business in Michigan. Therefore, complete diversity of citizenship exists. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

6. Venue in the Northern District of Florida is proper pursuant to 28 U.S.C. § 1391 because Plaintiff is located in this District, a substantial part of the

events or omissions on which the claims asserted herein are based occurred in this District, and the subject contract was executed in the District.

## FACTUAL BACKGROUND

7.      In 2020, Florida experienced an outbreak of severe acute respiratory syndrome coronavirus 2 ("SARS-CoV-2" or "coronavirus") and coronavirus disease 2019 ("COVID-19").  This has resulted in losses to business throughout the State of Florida and the United States.  Many businesses ceased operations or significantly reduced operations due to the pandemic.  Furthermore, orders from government entities, such as the Governor and County and Municipal Governments, required closure of many businesses in Florida.  As a result, many businesses have filed insurance claims for coverage for loss of business income due to the closure of their businesses.

8.      On March 1, 2020, the Governor of Florida, Ron DeSantis, issued Executive Order 20-51, directing the State Health Officer and Surgeon General to declare public health emergency in the State of Florida.[1]  The order acknowledged the presence of the first two confirmed cases of SARS-CoV-2 and COVID-19 within Florida, and that the CDC recommended particular guidelines to slow the spread of the virus.

---

[1] https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-51.pdf.

3

9. On March 9, 2020, Governor DeSantis, issued Executive Order 20-52, expanding his prior declaration of a public health emergency in the State of Florida.[2] The order acknowledged the presence and spread of SARS-CoV-2 and COVID-19 within Florida, having spread to eight counties, and that the virus posed a threat to the health and welfare of residents of the entire state of Florida.

10. On March 17, 2020, Governor DeSantis, issued Executive Order 20-68, which added specific restrictions to restaurants in Florida.[3] The order restricted restaurants to 50% capacity, and required that restaurants maintain a minimum of 6 feet between groups of customers and no more than 10 customers in any group. Additionally, the order required restaurants to screen any employee diagnosed with COVID-19 or showing symptoms of the disease, and to prohibit them from the premises.

11. On March 20, 2020, Governor DeSantis issued Executive Order 20-71, which required all restaurants and bars to suspend food service on their premises.[4] The order allowed businesses to continue to operate their kitchens for the purpose of providing delivery and take-out services.

12. On April 1, 2020, Governor DeSantis issued Executive Order 20-91, also known as the "Safer At Home" order, which ordered the closure of all

---

[2] https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-52.pdf.
[3] https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-68.pdf.
[4] https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-71.pdf.

businesses that do not provide "essential services."[5]  The order acknowledged the presence and spread of SARS-CoV-2 and COVID-19 within Florida, and that it posed a threat to the health and welfare of residents of Florida.  The order specified that all non-essential businesses would be closed for 30 days, subject to extension of the order by the Governor.

     13.    On or about March 17, 2020, Plaintiff began to restrict on-premises consistent with the requirements under the Governor's order.

     14.    On or about March 20, 2020 Plaintiff closed the premises to on-premise dining, and transitioned their kitchen to allowing carry-out only.

     15.    On-premise dining was prohibited until May 1, 2020, when Governor DeSantis lifted the restrictions preventing on-premise dining.  Other provisions regarding maximum capacity and social distancing remained in effect.

     16.    Starting in May, Plaintiff began a limited reopening consistent with the requirements of the executive orders issued by Governor DeSantis

     17.    On or about June 23, 2020, Jane Doe 1 notified the insured that she had been exposed to an individual who tested positive for SARS-CoV-2.  On or about July 3, 2020, Jane Doe 1, an employee of Plaintiff, was diagnosed with SARS-CoV-2 and/or COVID-19.  Jane Doe 1 had last been physically present on the insured premises on or about June 21, 20202, thereby exposing the insured

---

[5] https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-91-compressed.pdf.

premises to particles of SARS-CoV-2.  During this time, the employee had access to the full building, and was likely in most, if not all, rooms within the building, including the kitchen, dining area, and bathrooms.

18.  On or about June 29, 2020, John Doe 1 notified the insured that she had been exposed to an individual who tested positive for SARS-CoV-2.  On or about July 3, 2020, John Doe 1, an employee of Plaintiff, was diagnosed with SARS-CoV-2 and/or COVID-19.  John Doe 1 had last been physically present on the insured premises on or about June 26, 20202, thereby exposing the insured premises to particles of SARS-CoV-2.  During this time, the employee had access to the full building, and was likely in most, if not all, rooms within the building, including the kitchen, dining area, and bathrooms.

19.  As a result of these positive cases, on or about July 4, 2020, the insured premises were closed to business due to the presence of coronavirus, and risk to the company's customers and employees.  A private company was brought in on or about to sanitize the premises and ensure no further spread of COVID-19 among Plaintiff's employees or customers.

20.  Plaintiff remained closed for 9 days, and reopened for business on July 13, 2020, after management and staff had been tested and confirmed negative for coronavirus.

21.  On or about February 14, 2020, Defendants entered into a contract of insurance with Plaintiff, whereby Plaintiff agreed to make payments to Defendants in exchange for Defendants' promise to provide coverage to Plaintiff for covered losses including, but not limited to, business income losses at its insured premises.

22.  In return for payment of premiums, Southern-Owners issued Policy Number 204622-78400865-20 ("the Policy")[6] for a policy term of February 14, 2020 through February 14, 2021.  The policy is a package policy, including Commercial Property Coverage Commercial General Liability Coverage, and Liquor Liability Coverage.

23.  The insured premise is a restaurant located at 1 New Market Street, Cantonment, FL 32533.  The insured premise is open every day for lunch and dinner, and provides a range of food and beverage options, including alcoholic beverages.

24.  The Policy includes a declarations page stating what forms of coverage are provided under the Policy.  The insured premise is covered for Business Income and Extra Expense and is limited to "Actual Loss Sustained" during the policy period.

25.  Plaintiff has what is known as an "all risk policy."  The Policy specifies in the Building and Personal Property Coverage Form that Southern-

---

[6] Attached hereto as Exhibit A.

Owners would provide coverage for "direct physical loss of or damage to Covered Property… caused by or resulting from any Covered Cause of Loss."  The Policy defines "Covered Cause of Loss" as "risks of direct physical loss unless the loss is [excluded or limited]."

26.     The policy does not define the terms "direct", "physical", "loss", or "damage".

27.     The policy includes an endorsement providing coverage for Business Income and Extra Expense.  The endorsement modifies the Building and Personal Property Coverage Form to add an additional coverage.  The endorsement states that Southern-Owners "will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'."  The endorsement further states that Southern-Owners "will pay necessary Extra Expense you incur during the 'period of restoration'."

28.     The "period of restoration" is defined in the policy as the period of time beginning on the date of "direct physical loss or damage" and ending on the date the premises were "repaired, rebuilt, or replaced."

29.     There is an additional provision within the Business Income and Extra Expense endorsement that provides coverage for losses due to the action of civil authority.  The endorsement states that Southern-Owners will pay for the actual loss caused by "action of civil authority that prohibits access to the described

premises… due to direct physical loss of or damage to property, other than at the described premises… caused by or resulting from any Covered Cause of Loss." The term "civil authority" is not defined in the policy.

30. Plaintiff faithfully paid policy premiums to Southern-Owners, specifically to provide Building and Personal Property Coverage and additional coverages under the policy, including coverage for Business Income and Extra Expense.

31. Plaintiff sustained, and continues to sustain, a loss(es) due to SARS-CoV-2 and COVID-19 at, in, and / or around Plaintiff's insured premises described in the Policy.

32. Plaintiff sustained a loss(es) due to the civil authority orders issued by the Governor of Florida addressing SARS-CoV-2 and the COVID-19 pandemic. These actions restricted access to the insured premises, resulting in a loss of use of the insured premises by Plaintiff.

33. Plaintiff filed a claim of loss with Defendants on July 30, 2020, claiming losses due to coronavirus and related government-mandated closures. Plaintiff provided a recorded statement to Southern-Owners on August 18, 2020.

34. On August 26, 2020, Defendants issued a Coverage Position Letter denying the claim.[7] Southern-Owners stated that there was no direct physical loss

---

[7] Attached hereto as Exhibit B.

or damage to the insured premises, and asserted that the loss was a result of a government "seizure or destruction" of the insured property.

35. SARS-CoV-2 is a novel form of coronavirus which causes the disease COVID-19, a potentially lethal disease. It is from the same family of viruses as the virus which was behind the SARS outbreak in 2003.[8]

36. As a virus, SARS-CoV-2 is a physical substance, and can be present both inside and outside the human body in viral fluid particles. Although it is not visible to the naked eye, the virus particle does have a measurable size and mass.[9]

37. SARS-CoV-2 can and does remain capable of being transmitted and active on inert physical surfaces for a period of time. Studies have established that the virus particles can remain on certain surfaces for days, and even weeks, while remaining contagious.[10]

38. SARS-CoV-2 can and does remain capable of being transmitted and active on floors, walls, desks, tables, chairs, utensils, and clothing. The materials are present in virtually all workplaces, including restaurants like Plaintiff's.

39. SARS-CoV-2 can be transmitted by way of human contact with surfaces on which SARS-CoV-2 is physically present.[11] SARS-CoV-2 has been

---

[8] https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(20)30484-9/fulltext.
[9] https://www.thelancet.com/journals/lanres/article/PIIS2213-2600(20)30323-4/fulltext.
[10] https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days; https://www.bbc.com/news/health-54500673.
[11] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.

transmitted by way of human contact with surfaces and items of physical property located in the State of Florida, including in Escambia County.

40. SARS-CoV-2 can be transmitted by human to human contact and interaction at premises in Florida, including restaurants.[12] Studies have established that virus particles can be transmitted by direct human contact as well as by inhalation of virus particles expelled from the lungs of infected individuals.[13] SARS-CoV-2 has been transmitted by human to human contact and interaction at premises in the State of Florida, including Escambia County.

41. The presence of any SARS-CoV-2 particle renders items of physical property or premises unsafe. The presence of any SARS-CoV-2 particle on physical property impairs its value, usefulness and/or normal function.

42. The presence of any SARS-CoV-2 particle causes direct physical harm to property, direct physical loss of property, and direct physical damage to property.

43. The presence of any SARS-CoV-2 at premises renders the premises unsafe, thereby impairing the premises' value, usefulness and/or normal function.

44. The presence of people infected with or carrying SARS-CoV-2 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property.

---

[12] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.
[13] https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html.

45. The presence of people infected with or carrying SARS-CoV-2 particles at premises renders the premises, including property located at that premises, unsafe, resulting in direct physical loss to the premises and property.

46. When SARS-CoV-2 enters the body, it can reproduce rapidly, especially in the lungs, leading to the infected developing COVID-19. COVID-19 is characterized by numerous serious complications, including pneumonia, respiratory failure, multiple organ failure, heart arrhythmia, cardiomyopathy, acute kidney injury, and additional secondary viral or bacterial infections due to the weakened immune system.[14]

47. To date, the Centers for Disease Control and Prevention ("CDC") has identified over 13,000 confirmed cases of SARS-CoV-2 and over 250 deaths due to COVID-19 in Escambia County, Florida, and over 750,000 cases and over 16,000 deaths statewide.[15]

48. The CDC has published guidance for all public spaces and business prior to reopening after SARS-CoV-2 and COVID-19. The CDC guidance focused "on cleaning and disinfecting public spaces, workplaces, businesses, schools, and [homes]."[16]

---

[14] https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30558-4/fulltext.
[15] https://covid.cdc.gov/covid-data-tracker/index.html#county-map.
[16] https://www.cdc.gov/coronavirus/2019-ncov/community/reopen-guidance.html.

49. The Insurance Services Office, Inc. ("ISO") is a company that provides advice and consultation to the insurance industry. This includes drafting of standard insurance forms, such as coverage forms, endorsements, and exclusions. The Policy utilizes, in part, policy forms and language published by ISO, as reflected by the ISO copyright designation at the bottom of numerous pages of the Policy.

50. Prior to the effective date of the Policy, ISO published and made available for use a standard virus exclusion form. Defendants did not include the ISO standard virus exclusion form in the policy. The Policy includes no exclusion that references the word virus, nor does it mention the word virus at any point in the Policy.

51. Defendants were aware of the existence of forms that could have excluded viruses from coverage and declined to include them in the Policy.

52. The term "Civil Authority" is not defined in the Policy, either in the Building and Personal Property Coverage Form or the Business Income and Extra Expense endorsement.

53. The State of Florida is a civil authority as contemplated by the Policy.

54. Plaintiff did not qualify as an essential business under Governor DeSantis' Executive Order 20-91.

55. The State of Florida has issued authoritative orders governing Floridians and Florida businesses, including Plaintiff, in response to SARS-CoV-2 and the COVID-19 pandemic, which required Plaintiff to cease and/or significantly reduce operations at the insured premises described in the Policy.

56. SARS-CoV-2 and the COVID-19 pandemic are physically impacting public and private property in Florida and throughout the country.

57. SARS-CoV-2 and the COVID-19 pandemic have caused and continue to cause direct physical loss and damage to property.

58. People in Florida, including within Escambia, have been diagnosed with COVID-19.  Furthermore, there are people in Florida, including within Escambia County, who have been infected with SARS-CoV-2 and developed the COVID-19 disease, but who have not been diagnosed.

59. People in Florida and Escambia County have SARS-CoV-2 particles on or about their person and personal property.

60. Properties and premises throughout Florida contain the presence of SARS-CoV-2 particles on surfaces and items of property.

61. SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the Policy period.

62. Individuals carrying SARS-CoV-2 particles in, on, or about their person have been present at Plaintiff's premises described in the Policy during the Policy period.

63. Airborne SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the Policy period.

64. Plaintiff has sustained direct physical loss and damage to items of property located at its premises and direct physical loss and amage to its premises described by the Policy as a result of the presence of SARS-CoV-2, COVID-19, and / or the COVID-19 pandemic.

## COUNT I:  DECLARATORY JUDGEMENT

65. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1–60 above.

66. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

67. The Policy is an insurance contract under which Defendants were paid premiums in exchange for their promise to pay Plaintiff's losses for claims covered

by the Policy, such as business losses incurred as a result a covered loss, including losses cause by the loss of use of the premises due to the presence of the virus.

68. Plaintiff has complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies.

69. Defendants have refused to reimburse Plaintiffs for any losses incurred by Plaintiff in connection with the loss of use of the property due to the presence of the virus.

70. Defendants have refused to reimburse Plaintiffs for any losses incurred by Plaintiff in connection with the loss of use of the premises due to orders by civil authority.

71. An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendants dispute and deny that:

   a. The coronavirus creates any direct physical damage or loss as defined under the policy;

   b. The Policy provides coverage to Plaintiff for any current and future civil authority closures due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

    c. The Policy provides business income and extra expense coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

    d. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

72. Plaintiff seeks Declaratory Judgment as to whether the presence of SARS-CoV-2 on the insured premises constitutes a "physical loss of or damage to" the insured property.

73. Plaintiff seeks Declaratory Judgment as to whether losses due to SARS-CoV-2 and/or COVID-19 constitute a covered loss under the Business and Personal Property Coverage Form in the Policy.

74. Plaintiff seeks Declaratory Judgment as to whether Plaintiff is entitled to coverage under the Business Income and Extra Expense form in the Policy.

75. Plaintiff seeks Declaratory Judgment as to whether Plaintiff is entitled to coverage under the civil authority provisions in the Policy.

76. Plaintiff does not seek any determination of whether SARS-CoV-2 was physically present in or at the insured premises, amount of damages, or any other remedy other than declaratory relief.

WHEREFORE, Plaintiff TL Goodson LLC respectfully requests this court render Declaratory Judgment for the Plaintiff that the Policy provides coverage for Plaintiff's business losses under the Policy's Business Income and Extra Expense endorsement, and ORDER Defendants to provide coverage and proceed to adjustment of the value of the claim.

*/s/ Wesley A. Bowden*
WESLEY A. BOWDEN, Esq.
Florida Bar No.: 64217
T. ALEXANDER TAYLOR, Esq.
Florida Bar No.: 0125308
LEVIN PAPANTONIO RAFFERTY
PROCTOR, BUCHANAN, O'BRIEN,
BARR & MOUGEY, P.A
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
*Attorney for Plaintiff*
