# UNITED STATES DISTRICT COURT
### Northern District of Florida

### Civil Action No. 3:21-cv-00178-MCR-EMT

| | |
|---|---|
| TL GOODSON, LLC | ) |
| *Plaintiff* | ) |
| | ) |
| v. | ) |
| | ) |
| SOUTHERN-OWNERS INSURANCE | ) |
| COMPANY and AUTO-OWNERS | ) |
| INSURANCE COMPANY | ) |
| *Defendants* | ) |
| | ) |

## DISPOSITIVE MOTION

## DEFENDANTS SOUTHERN-OWNERS INSURANCE COMPANY'S AND AUTO-OWNERS INSURANCE COMPANY'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and for the reasons stated in the incorporated memorandum of law which follows, Defendants Southern-Owners Insurance Company ("SOIC") and Auto-Owners Insurance Company ("Auto-Owners") respectfully request that this Court dismiss Plaintiff's Complaint, with prejudice, due to a lack of standing as to Auto-Owners, and for failure to state a claim upon which relief can be granted against either Defendant.

## MEMORANDUM OF LAW

This lawsuit is yet another in a line of cases seeking "business interruption" insurance coverage arising out of the COVID-19 pandemic. "[F]ederal district

1

courts throughout the country have dismissed substantially similar COVID-19 related lawsuits for failing to state a claim for business income coverage." *El Novillo Rest. v. Certain Underwriters at Lloyd's*, __F. Supp. 3d __, 2020 U.S. Dist. LEXIS 233994, at \*16 (S.D. Fla. Dec. 7, 2020).  More than 200 complaints just like this one have been dismissed by courts to date.  (*See* **Ex. 1**.)  That includes at least 36 opinions issued by Florida's state and federal courts interpreting similar language under Florida law.  And it includes at least 7 opinions interpreting similar policy language that appeared in policies issued by SOIC, Auto-Owners, or their affiliates.

Those courts got it right.  Plaintiff's single claim for Declaratory Judgment boils down to its position that Defendants wrongly denied Plaintiff's claim for Business Income, Extra Expense, and Civil Authority coverage.  For several reasons, Plaintiff is mistaken.  *First*, to trigger Business Income or Extra Expense coverage under a property insurance policy, the policyholder must generally show "direct physical loss or damage to" covered property caused by a "covered cause of loss." Florida courts are clear that this requires a showing of tangible, physical damage to the plaintiff's property.  Plaintiff makes no such allegation and cannot do so in good faith.  *Second*, Plaintiff's claim for Civil Authority coverage lacks merit because no Civil Authority order issued *because of* "damage to property other than" Plaintiff's, nor has Plaintiff alleged that a Civil Authority order completely "prohibit[ed] access to" Plaintiff's property, as the Policy requires.  And *third*, even if all of that were not

2

true, Plaintiff's claims would still be barred by the Policy's exclusions.  Put simply, as courts around the country have held, the existence of the COVID-19 pandemic does not trigger coverage in situations such as this.  Plaintiff's claim was therefore properly rejected, and its case should be dismissed with prejudice.

## BACKGROUND

### I.   Plaintiff's Allegations

Plaintiff TL Goodson LLC owns and operates a restaurant in Cantonment, Florida that, in normal times, "is open every day for lunch and dinner, and provides a range of food and beverage options, including alcoholic beverages." (Compl. ¶¶ 1, 23, Doc. 1.)

#### A.   The Governor's Executive Orders Limit the Ability of Restaurants to Operate at Full Capacity.

Due to the COVID-19 pandemic, the Governor issued a series of Executive Orders—three of which, Plaintiff alleges, affected the restaurant industry.  (*Id.* ¶¶ 8-12.)  First, on March 17, 2020, the Governor signed Executive Order 20-68, which "restricted restaurants to 50% capacity," required "a minimum of 6 feet between groups of customers and no more than 10 customers in any group," and required restaurants to "screen any employee diagnosed with COVID-19 or showing

symptoms of the disease, and to prohibit them from the premises."  (Compl. ¶ 10; EO 20-68 at § 3, ¶¶ A-C, **Ex. 2**[1].)

Second, three days later, the Governor issued Executive Order 20-71, which "required all restaurants and bars to suspend food services on their premises," but "allowed businesses to continue to operate their kitchens for the purpose of providing delivery and take-out services."  (Compl. ¶ 11; EO 20-71, § 2, **Ex. 3**.) This Order specifically allowed certain employees "access to such establishments [restaurants and bars] for the purposes of delivery or take-out services."  (*Id.*)

Third, on April 1, Executive Order 20-91 (the "Safer from Home Order") issued.  (EO 20-91, **Ex 4**.)   This Order required persons in Florida to stay home except to conduct "essential activities" or "obtain or provide essential services[.]" (Compl. ¶ 12; EO 20-91, § 1, ¶ B.)  "Essential services" included those "designated by Executive Order 20-89 and its attachment which consists of a list propounded by Miami-Dade County in multiple orders." (EO 20-91, § 2, ¶ A.)  And that list stated, "Essential retail and commercial businesses, which may remain open, are . . .

---

[1] This Court can consider the text of the Executive Orders at this stage because they are referenced in and central to Plaintiff's Complaint, and because they are public documents bearing the Governor's signature.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1318 n.3 (11th Cir. 2018) (courts may consider documents "beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss" if "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss").  For ease of reference, Defendants attach the Executive Orders in their entirety here.

Restaurants and other facilities that prepare and serve food, but subject to the limitations and requirements of Emergency Order 3-20." (EO 20-89, **Ex. 5** (incorporating Miami-Dade Order 7-20, ¶ 2(m)).) The "Safer at Home" order further provided that "[a]ll businesses or organizations are encouraged to provide delivery, carry-out or curbside service outside of the business or organization, of orders placed online or via telephone, to the greatest extent practicable." (EO 20-91, § 2, ¶ E.)

Later, on April 29, 2020, the Governor issued Executive Order 20-112, which allowed restaurants to reopen on-premises dining on May 4, 2020, subject to a limit of 25% indoor capacity, social distancing of 6 feet between parties, and parties of 10 people or less. (EO 20-112, § 3, ¶ B, **Ex 6**.)

## B.   Plaintiff Limits Its Operations In Compliance With the Executive Orders.

In accordance with those Executive Orders, Plaintiff alleges it "began to restrict on-premises [dining]" on March 17, 2020; "closed" to on-premises dining and transitioned to carry-out only on March 20, 2020; and "in May, . . . began a limited reopening consistent with the requirements of the executive orders[.]" (Compl. ¶¶ 13-14, 16.) Plaintiff further alleges that, after two employees were exposed to the virus in June 2020, its restaurant "closed to business" for 9 days so that a "private company" could "sanitize the premises and ensure no further spread of COVID-19 among Plaintiff's employees or customers." (*Id.* ¶¶ 19-20.)

## C.    Plaintiff Sues SOIC and Auto-Owners.

Plaintiff then "filed a claim of loss with Defendants on July 30, 2020, claiming losses due to coronavirus and related government-mandated closures." (Compl. ¶ 33.) Plaintiff states that "Defendants issued a Coverage Position Letter denying the claim" on August 26. (*Id.* ¶ 34.) After the claim was denied, Plaintiff filed this lawsuit. Plaintiff's Complaint does not seek actual damages, but instead includes a single claim for Declaratory Judgment. Specifically, Plaintiff "seeks Declaratory Judgment as to":

- "[W]hether the presence of SARS-CoV-2 on the insured premises constitutes a 'physical loss of or damage to' the insured property";

- "[W]hether losses due to SARS-CoV-2 and/or COVID-19 constitute a covered loss under the Business and Personal Property Coverage Form in the Policy";

- "[W]hether Plaintiff is entitled to coverage under the Business Income and Extra Expense form in the Policy"; and

- "[W]hether Plaintiff is entitled to coverage under the civil authority provisions in the Policy."

(Compl. ¶¶ 72-75.) Plaintiff states that it "does not seek any determination of whether SARS-CoV-2 was physically present in or at the insured premises, amount of damages, or any other remedy other than declaratory relief." (*Id.* ¶ 76.)

## II.    <u>The Policy</u>

Plaintiff's Complaint centers on an insurance policy it entered into with "Defendants" on February 14, 2020. (Compl. ¶ 21.) Although Plaintiff named both

SOIC and Auto-Owners as Defendants, as the Policy attached to the Complaint makes clear, SOIC (and SOIC alone) issued the Policy.  (Policy, Doc. 1-1, Page 5 of 182.)

**A.    The Policy's Coverage Provisions.**

As the Complaint acknowledges, coverage under the Policy is triggered by "direct physical loss of or damage to Covered Property."  (Compl. ¶ 25.)   The Policy's "Coverage" provision states:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Building and Personal Property ("BPP") Coverage Form, § A, Doc. 1-1, Page 118 of 182.)  The BPP Coverage Form incorporates the definition of a "Covered Cause of Loss" from the "Causes of Loss Form as shown in the Declarations."  (*Id.* § A.3, Doc. 1-1, Page 120 of 182.)  And the Causes of Loss Form provides that ". . . Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is: 1. Excluded in Section B., Exclusions; or 2. Limited in Section C., Limitations that follow." (Causes of Loss Special Form, § A, Doc. 1-1, Page 35 of 182; *see also* Compl. ¶ 25 (acknowledging the same definition).)

In support of its argument for coverage (Compl. ¶¶ 72-76), Plaintiff specifically relies on the following provisions in the Policy's "Business Income And Extra Expense Coverage Form":

**a. Business Income.** Subject to the Limit of Insurance provisions of this endorsement, we will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations"[2] during the "period of restoration."[3]

**b. Extra Expense.** Subject to the Limit of Insurance provisions of this endorsement, we will pay necessary Extra Expense you incur during the "period of restoration".  Extra Expense means expense incurred:

**(1)** To avoid or minimize the suspension of business and to continue "operations": **(a)** At the described premises or at a "newly acquired location"; or **(b)** At replacement premises or at temporary locations, including: **1)** Relocation expenses; and **2)** Costs to equip and operate the replacement or temporary locations.

**(2)** To minimize the suspension of business if you cannot continue "operations".

**(3) (a)** To repair or replace any property; or **(b)** To research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or the Additional Coverage, Business Income.

---

[2] "Operations" are defined as "your business activities occurring at the described premises or at a 'newly acquired location.'"  (Business Income and Extra Expense Coverage Form, § 4, Doc. 1-1, Page 50 of 182.)

[3] "Period of Restoration" is defined as "the period of time that: **a.** Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises or at a 'newly acquired location'; and **b.** Ends on the date when the property at the described premises or at a 'newly acquired location' should be repaired, rebuilt or replaced with reasonable speed and similar quality." (Business Income and Extra Expense Coverage Form, § 4, Doc. 1-1, Page 50 of 182.)

**[Civil Authority]:** Subject to the Limit of Insurance provisions of this endorsement, we will also pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises or to a "newly acquired location" due to direct physical loss of or damage to property, other than at the described premises or at a "newly acquired location", caused by or resulting from any Covered Cause of Loss.  This coverage will apply for a period of up to two consecutive weeks from the date of that action.

(Business Income and Extra Expense Coverage Form, §§ 1(a), 1(b), Doc. 1-1, Page 47 of 182.)

**B.    The Policy's Exclusions.**

In addition, the Policy's Causes of Loss Form refers to "Exclusions" which, under Florida law, only come into play if the Court first finds that coverage exists. As relevant to this case, the Policy contains the following Exclusions:

**B. EXCLUSIONS**

**1.**   We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a.  Ordinance or Law**. The enforcement of any ordinance or law: (1) Regulating the . . . use . . . of any property . . .

**c.  Governmental Action.** Seizure or destruction of any property by order of governmental authority . . . .

**2.**   We will not pay for loss or damage caused by or resulting from any of the following: . . . .

**b.** Delay, loss of use or loss of market. . . .

9

**3.** We will not pay for loss or damage caused by or resulting from any of the following.  But if loss or damage caused by a Covered Cause of Loss results, we will pay for that resulting loss or damage. . . .

> **b. Acts or Decisions:** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

> **4a. Business Income and Extra Expense Exclusions.** We will not pay for:  . . . . **(5)** Any other consequential loss.

(Causes of Loss Special Form, § B.1(a), (c); § B.2(b); § B.3(b); § B.4(a)(5), Doc. 1-1, Pages 35-38 of 182.)

## LEGAL STANDARDS

### I.   Pleading Standards

Defendants' arguments to dismiss the claims against Auto-Owners for lack of standing implicate this Court's subject matter jurisdiction, and are decided under Federal Rule of Civil Procedure 12(b)(1).  *Snyder v. Green Rds. of Fla. LLC*, 430 F. Supp. 3d 1297, 1302 (S.D. Fla. 2020).  When, as here, a Rule 12(b)(1) motion is a "facial attack," courts apply standards similar to those under Rule 12(b)(6). *McElmurray v. Consolidated Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244 (11th Cir. 2007).

Under Rule 12(b)(6)—which also applies to Defendants' remaining arguments for dismissal—a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  Two "working principles" underlie the Rule's pleading requirements.  *Id.*  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.  "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.*

## II.   Contract Interpretation In Florida

"Under Florida law, the interpretation of an insurance contract is a matter of law to be decided by the court."  *AIX Specialty Ins. Co. v. Ashland 2 Partners, LLC*, 383 F. Supp. 3d 1334, 1337 (M.D. Fla. 2019).[4]  "When considering insurance coverage disputes, courts routinely dismiss complaints for failure to state a claim when a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the underlying claim is not covered."  *Cammarota v. Penn-America Ins. Co.*, No. 17-cv-21605, 2017 U.S. Dist. LEXIS

---

[4] Here, the Court must apply Florida law to interpret the contract. Under the Erie doctrine, "the construction of insurance contracts is governed by substantive state law."  *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227 (11th Cir. 2005) (citation omitted).  Florida applies the traditional rule of *lex loci contractus* to insurance contracts, such that "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage."  *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160, 1163 (Fla. 2006) (*citing Stuiriano v. Brooks*, 523 So.2d 1126, 1129 (Fla. 1988)); *see also LaTorre v. Conn. Mut. Life Ins. Co.*, 38 F.3d 538, 540 (11th Cir. 1984).

188073, at *5-6 (S.D. Fla. Nov. 9, 2017) (collecting cases within and outside the Eleventh Circuit and Florida).  This Court may consider the terms of the Policy and the Executive Orders, all of which Plaintiff referenced in its Complaint.  *Tellabs, Inc.*, 551 U.S. at 322.  "A party claiming coverage…generally bears the burden of proof to establish that coverage exists."  *Mama Jo's, Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 878 (11th Cir. 2020), *cert den.*, Case No. 20-998, 2021 U.S. LEXIS 1618 (Mar. 29, 2021).

## **ARGUMENT**

### I.  **Plaintiff Lacks Standing to Sue Auto-Owners.**

As a threshold matter, all claims raised against Auto-Owners should be dismissed because Plaintiff has alleged no facts implicating Auto-Owners in any wrongdoing.  "[S]tanding is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). It is assessed on a claim-by-claim basis. *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018). And it is assessed on a party-by-party basis. *Lewis*, 518 U.S. at 357.  Put simply, a "plaintiff proceeding against multiple defendants must establish standing as to each defendant and each claim." *Holland v. J.P. Morgan Chase Bank, N.A.*, No. 19 Civ. 00233, 2019 U.S. Dist. LEXIS 146553, at *14 (S.D.N.Y. Aug. 28, 2019).

Plaintiff has not done so.  This case centers on the alleged breach of an insurance policy that—as the Policy itself makes clear—was issued by SOIC (and

only SOIC), and to which Auto-Owners was not a party.  (Policy Declarations, Doc. 1-1, Page 5 of 182.)  When an insured sues entities who "are not parties to the policy at issue," the insured "lacks standing to pursue [its] claims against those entities because [the] injury is not traceable to them."  *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 420 (6th Cir. 2020); *see also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005).

Put simply, because Auto-Owners is not Plaintiff's insurer, it is not a proper defendant.  While SOIC is a member of the Auto-Owners group of companies, they are separate entities, with separate certificate of authorities, and issue separate insurance policies.  Because any injury suffered by Plaintiff is not traceable to Auto-Owners, all claims against Auto-Owners should be dismissed for lack of Article III standing.

## II.   <u>Plaintiff's Request for a Declaratory Judgment Should be Denied.</u>

"Florida law places on the insured the burden of proving that a claim against it is covered by the insurance policy."  *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997); *see also Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, 172 F. Supp. 3d 1326, 1334 (M.D. Fla. 2016) ("[T]he insured bears the burden of proving that a claim is covered by the insurance policy[.]"). It necessarily follows that, to state a valid cause of action, Plaintiff's Complaint must allege facts that bring the claim within the Policy's insurance agreement.  *LaFarge*, 118 F.3d at

1516.  If Plaintiff meets that initial burden, then the burden shifts to SOIC to prove that an exclusion applies.  *Mid-Continent Cas. Co. v. Frank Casserino Constr.*, 721 F. Supp. 2d 1209, 1215 (M.D. Fla. 2010) ("Once the insured shows coverage, the insurer has the burden of proving an exclusion.").[5]

Here, Plaintiff fails at each step.  Plaintiff cannot meet its initial burden of proving that its claim is covered by the Policy and, even if it could, the Policy's exclusions would still bar coverage.  Plaintiff's request for a Declaratory Judgment should therefore be denied, and its Complaint should be dismissed with prejudice.

## A.   Plaintiff Fails To Allege It Suffered a Direct Physical Loss And, Therefore, Is Not Entitled to Business Income Or Extra Expense Coverage.

Plaintiff's Complaint seeks a declaratory ruling that it is entitled to coverage under the Policy's Business Income, Extra Expense, and Civil Authority provisions. Each provision requires Plaintiff to show it suffered a "direct physical loss."  More broadly, the BPP Coverage Form's "Coverage" provision states that SOIC "will pay

---

[5] Notably, Plaintiff spends several paragraphs of its Complaint contending that SOIC's Policy does not include a "virus" exclusion, even though "Defendants were aware of the existence of forms that could have excluded viruses from coverage." (Compl. ¶¶ 49-51.)   As this framework shows, the lack of a virus exclusion is immaterial because exclusions come into play only if Plaintiff can first show that coverage applies—an inquiry that looks to whether a "direct physical loss" occurred. Put differently, the application of an exclusion is a separate inquiry from the threshold question of whether coverage applies in the first place.  *See Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 555 (2003) (finding no direct physical loss and stating that it was therefore "unnecessary to analyze the various exclusions and their application to this case").

for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  (BPP Coverage Form, § A.); *see also Royal Palm Optical, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-80749, __ F. Supp. 3d __, 2021 U.S. Dist. LEXIS 62754, at *4 (S.D. Fla. Mar. 30, 2021) (explaining that "[t]his is the most critical part of the Policy because it describes what event triggers the remainder of the Policy.").

And more specifically:

- Business Income coverage applies only when there is a "necessary suspension of 'operations' during the 'period of restoration.'" (Business Income and Extra Expense Form, § 1(a).)  A "period of restoration" begins only after there has been "**direct physical loss or damage caused by or resulting from any Covered Cause of Loss** . . ." (*Id.* § 4 (emphasis added).)  And a Covered Cause of Loss means "Risks of Direct Physical Loss . . ." (Causes of Loss Special Form, § A.)

- Extra Expense coverage applies only to "necessary Extra Expense you incur during the 'period of restoration.'"  (Business Income and Extra Expense Form, § 1(b).)    Again, the "period of restoration" begins only after there has been "**direct physical loss or damage caused by or resulting from any Covered Cause of Loss.**" (*Id.* § 4 (emphasis added).)

- Civil Authority coverage applies only to "pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises or to a 'newly acquired location' **due to direct physical loss of or damage to property**, other than at the described premises or at a "newly acquired location" . . . (Business Income and Extra Expense Form, § 1 (emphasis added).)

Here, Plaintiff's claim for coverage under these three provisions was properly denied for the simple reason that Plaintiff has not suffered "direct physical loss or damage" to Covered Property.

Florida courts have found that a "direct physical loss 'contemplates an actual damage in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 U.S. Dist. LEXIS 201852, at *24 (S.D. Fla. June 11, 2018) (citation omitted), aff'd 823 F. App'x 868; *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017) ("A 'loss' is the diminution of value of something . . . 'Direct' and 'physical' modify loss and impose the requirement that the damage be actual.").

Thus, it is not surprising that Florida courts have held in unison that there must be actual, tangible damage to property to trigger a "direct physical loss." *See, e.g.*, *Royal Palm*, 2021 U.S. Dist. LEXIS 62754, at *11-12 ("The critical policy language at issue here . . . requires some form of actual, tangible damage to the physical property itself to trigger the Policy's affirmative grant of coverage.  This is borne out by the ordinary meaning of those terms as understood in context."); *Infinity Exhibits v. Certain Underwriters at Lloyd's London*, 2020 U.S. Dist. LEXIS 182497, at *8, 10 (M.D. Fla. Sept 28, 2020) (holding that "Florida law and the plain language

16

of the Policies reflect that actual, concrete damage is necessary," and recognizing that "[c]ourts across the country have held that such coverage does not exist where, as here, policyholders fail to plead facts showing physical property damage."); *Emerald Coast Rests., Inc. v. Aspen Specialty Ins. Co.*, No. 3:20-cv-5898, 2020 U.S. Dist. LEXIS 246518, at *2 (N.D. Fla. Dec. 18, 2020) (Wetherell, J.) (similar policy "clearly and unambiguously requires actual physical damage to the property"); *Harvest Moon Distribs., LLC v. Southern-Owners Ins. Co.*, No. 6:20-cv-1026, __ F. Supp. 3d __, 2020 U.S. Dist. LEXIS 189390 (M.D. Fla. Oct. 9, 2020) (dismissing similar claim based on policy issued by SOIC).[6]

---

[6] *See also, e.g.*, *Prime Time Sports Grill, Inc. v. DTW 1991 Underwriting, Ltd.*, No. 8:20-cv-771- T-36JSS, 2020 U.S. Dist. LEXIS 237338 (M.D. Fla. Dec. 17, 2020) (explaining that under Florida law, "there must be tangible damage to property for a 'direct physical loss' to exist"); *Nahmad v. Hartford Cas. Ins. Co.*, No. 1:20-cv-22833, 2020 U.S. Dist. LEXIS 203838, at *15-23 (S.D. Fla. Nov. 2, 2020) (applying same standard and stating that "[n]umerous other courts across the country have dismissed substantially similar COVID-19-related lawsuits at this stage for failing to plead actionable claims under the insurance policy . . . The Court finds these decisions instructive"); *Mauricio Martinez, DMD, PA v. Allied Ins. Co. of Am.*, 2020 U.S. Dist. LEXIS 165140 (M.D. Fla. Sept 2, 2020); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615, 2020 U.S. Dist. LEXIS 156027 (S.D. Fla. Aug. 26, 2020) (interpreting direct physical loss requirement under Florida law to require tangible damage, explaining that application of "a more expansive definition of 'direct physical loss or damage'" would require the court to "ignore both Eleventh Circuit and Florida precedent," and dismissing business income claims); *El Novillo*, 2020 U.S. Dist. LEXIS 233994, at *16-17 (collecting cases requiring the property to "undergo[] a 'distinct, demonstrable, physical alteration'"); *Carrot Love, LLC v. Aspen Specialty Ins. Co.*, Civil Action No. 20-23586-Civ, 2021 U.S. Dist. LEXIS 6060, at *5-6 (S.D. Fla. Jan. 12, 2021).

This is consistent with how the Eleventh Circuit has interpreted the "direct physical loss" requirement in other contexts. *Mama Jo's*, 823 F. App'x at 879 ("[U]nder Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'"). It is consistent with how courts across the country have interpreted the language in COVID-19 related claims.[7] (*See* **Ex. 1**.) And it is also consistent with a leading treatise in the industry. *See* 10A Steven Plitt, *et al*., COUCH ON INSURANCE § 148:46 (3d ed. 2019) ("The requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

---

[7] In doing so, many of these courts have also pointed to definitions of a "period of restoration" similar to that in Plaintiff's Policy here. They have noted that the "period of restoration" is only in place while the property is being rebuilt, repaired, or replaced, and in the absence of tangible, physical damage, there would be no need to repair, rebuild, or replace the property. *See Malaube*, 2020 U.S. Dist. LEXIS 156027, at *25 ("The words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it."); *See KD Unlimited, Inc. v. Owners Ins. Co.*, No. 1:20-cv-2163, 2021 U.S. Dist. LEXIS 5926, at *13 (N.D. Ga. Jan. 5, 2021) ("This range of contemplated harms aligns with an understanding that 'direct physical loss or damage to' requires a physical change in the property subject to restoration."); *El Novillo*, 2020 U.S. Dist. LEXIS 233994, at *16 ([T]he words 'repair' and 'replace' in the policy's definition of 'period of restoration' contemplated 'physical damage to the insured premises.'").

Plaintiff's Complaint makes no attempt to meet this standard.  There is not a single factual allegation showing that the virus caused "actual, tangible damage to the physical property itself." *Royal Palm*, 2021 U.S. Dist. LEXIS 62754, at *12; *Prime Time Sports Grill*, 2020 U.S. Dist. LEXIS 237338 ("[T]here must be tangible damage to property for a 'direct physical loss' to exist").  Rather than allege tangible, structural harm to its property, Plaintiff's Complaint points to three other "damages" caused by the pandemic, none of which trigger coverage under the Policy.

>     1.     Loss of Use and Economic Harm Is Not Direct Physical Loss.

First, Plaintiff contends that it "sustained a loss(es) due to the civil authority orders issued by the Governor" because those orders "restricted access to the insured premises, resulting in a loss of use of the insured premises by Plaintiff."  (Compl. ¶ 32.)  Plaintiff further contends that the presence of the virus "on physical property impairs its value, usefulness, and/or normal function." (*Id.* ¶ 41.)

Time and again, however, Florida courts have recognized that a "loss of use," "loss of function," or "loss of value"—in the absence of tangible, physical damage to the policyholder's property—is not a "direct physical loss." *Malaube*, 2020 U.S. Dist. LEXIS 156027, at *25 (rejecting plaintiff's request that the court "adopt a more expansive definition of 'direct physical loss or damage,' so that coverage could apply if the property is either uninhabitable or substantially unusable"); *Atma Beauty, Inc. v. HDI Global Specialty SE*, No. 1:20-cv-21745, 2020 U.S. Dist. LEXIS

243999, at *9-10 (S.D. Fla. Dec. 30, 2020) ("Plaintiff's Complaint fails to clearly articulate the *actual* physical loss or damage to the salon. While Plaintiff argues that a loss of functionality of, access to, or intended use of the salon constitutes physical loss or damage, it is not supported by the plain language of the Policy or Florida law."); *Digital Age Mktg. Grp. v. Sentinel Ins. Co.*, No. 20-61577, __ F. Supp. 3d __, 2021 U.S. Dist. LEXIS 4835, at *12 (S.D. Fla. Jan. 8, 2021) ("Mere 'economic losses—not anything tangible, actual, or physical' do not suffice to demonstrate direct physical loss under Florida law.").

Courts elsewhere widely agree.[8]  *See KD Unlimited*, 2021 U.S. Dist. LEXIS 5926, at *9-10 ("Multiple courts have now considered and rejected the Plaintiff's loss of use theory in the COVID-19 business interruption context, finding that the ordinary meaning of 'physical loss of or damage to' requires a physical or tangible change."); *T&E Chicago LLC v. Cincinnati Ins. Co.*, No. 20 C 4001, 2020 U.S. Dist. LEXIS 217090, at *9-11 (N.D. Ill. Nov. 19, 2020) ("The Court agrees with the courts that have found that loss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property."); *Goodwill Indus. of Cent. Okla. v. Phila. Indem. Ins. Co.*, No. CV-20-511-R, 2020

---

[8] And even if they did not agree, as explained below, the Policy here expressly excludes damages caused from "delay, *loss of use* or loss of market."

U.S. Dist. LEXIS 210408, at *7 (W.D. Okla. Nov. 9, 2020) (rejecting a "more expansive definition" that would sweep in loss of use).

This Court should follow these well-reasoned opinions. Put simply, whether Plaintiff could use its restaurant as intended is irrelevant to whether coverage applies. All that matters is whether Plaintiff suffered a "direct physical loss" to its property. Because the Complaint does not allege facts showing that it did, the claim should be dismissed.

2.  <u>Presence of the Virus on Plaintiff's Property Is Not Direct Physical Loss.</u>

Next, Plaintiff contends that the virus was present both on its property, and on its employees and customers, that the "presence of any SARS-CoV-2 particle causes direct physical harm to property, direct physical loss of property, and direct physical damage to property," and that "Plaintiff has sustained direct physical loss and damage to items of property located at its premises and direct physical loss and [d]amage to its premises . . . as a result of the presence of . . . COVID-19 . . . ." (Compl. ¶¶ 41-43, 45, 56-64.)

Plaintiff offers no support for the conclusory statements—which, under *Iqbal* and *Twombly*, need not be accepted as true—that the mere presence of COVID-19 causes physical damage. And like Plaintiff's other theories, this one, too, has been flatly rejected. *See Mena Catering v. Scottsdale Ins. Co.*, No. 1:20-cv-23661, 2021 U.S. Dist. LEXIS 4326, at *18 (S.D. Fla. Jan. 8, 2021) ("There is no 'direct physical

loss' where the alleged harm consists of the mere presence of the virus on the physical structure of the premises."); *Bon Appetite Crepes & Baguettes, LLC v. Certain Underwriters at Lloyd's London*, No. 2020-016074-CA-01 (Miami-Dade Cty. Circuit Ct. Mar. 12, 2021), slip op. at ¶ 11 ("Virus particles being present on, or adhering to, the surfaces of property do not cause actual physical damage to the property, nor does that issue require repair or restoration."); *KD Unlimited*, 2021 U.S. Dist. LEXIS 5926, at *14-15 ("Even if the Plaintiff did allege that COVID-19 was physically present in the premises, the Court still does not find that the presence of COVID-19 particles on the Plaintiff's property, without more, constitutes a 'direct physical loss or damage to' the property.  Routine cleaning performed with greater frequency and care eliminates the virus on surfaces."); *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 U.S. Dist. LEXIS 204152, at *13 (S.D. W. Va. Nov. 2, 2020) ("[E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property."); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20-cv-2160, 2020 U.S. Dist. LEXIS 171979, at *4-5 (N.D. Ill. Sept. 21, 2020) ("Plaintiff simply cannot show any such loss as a result of either inability to access its own office or the presence of the virus on its physical surfaces . . .").

### 3. Plaintiff's Nine-Day Closure So It Could "Sanitize" the Restaurant Is Not a Direct Physical Loss.

As a final matter, Plaintiff appears to allege damage stemming from the fact that its restaurant temporarily closed down so that it could be sanitized after a COVID-19 exposure. As the Eleventh Circuit explained in *Mama Jo's*, "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" 823 F. App'x at 879, cert den. It necessarily follows that Plaintiff "cannot allege direct physical loss by claiming its property was superficially contaminated with COVID-19 particles." *Rococo Steak, LLC v. Aspen Specialty Ins. Co.*, No. 8:20-cv-2481-VMC-SPF, 2021 U.S. Dist. LEXIS 15191, at *11 (M.D. Fla. Jan. 27, 2021); *Edison Kennedy, LLC v. Scottsdale Ins. Co.,* No. 8:20-cv-1416-T-02SPF, 2021 U.S. Dist. LEXIS 226, at *19 (M.D. Fla. Jan. 4, 2021) ("As in *Mama Jo's* and the cases thereafter, the necessity of cleaning the property to remove particles resting on the property does not mean the property suffered direct physical damage or loss.").

In summary, the court in *Infinity Exhibits* put it best when it explained that "Florida law and the plain language of the Policies reflect that actual, concrete damage is necessary." 2020 U.S. Dist. LEXIS 182497, at *8. Plaintiff's Complaint does not meet this standard, and it makes no meaningful attempt to argue otherwise. The Complaint—and all of its claims that rest on Plaintiff's erroneous interpretation of a "direct physical loss"—should therefore be dismissed with prejudice.

**B.      Plaintiff Is Not Entitled to Civil Authority Coverage.**

Plaintiff also contends it was wrongly denied "Civil Authority" coverage, which applies when there has been "actual loss of Business Income . . . and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises or to a 'newly acquired location' due to direct physical loss of or damage to property, other than at the described premises or at a 'newly acquired location', caused by or resulting from any Covered Cause of Loss."  For two reasons, Plaintiff is mistaken.

*First*, just as Plaintiff failed to allege direct physical loss of its own property, Plaintiff also failed to allege that access to its property was prohibited "due to direct physical loss of or damage to property, *other than at the described premises* or at a 'newly acquired location.'"  This claim therefore suffers from the same flaws as Plaintiff's claim for Business Income and Extra Expense coverage.  As also explained above, Plaintiff has not suffered a "loss of Business Income" or "necessary Extra Expense," whether from a Civil Authority order or otherwise.  *See Rococo Steak*, 2021 U.S. Dist. LEXIS 15191, at *14-15 ("[N]either physical contamination by COVID-19 nor a decrease in business constitutes direct physical loss or damage. Rococo thus fails to show how other properties in the surrounding area were 'damaged' by COVID-19 or how the actions of civil authority were authorized in response to 'dangerous physical conditions.'").

*Second*, Plaintiff has failed to adequately allege that any loss it experienced was "caused by action of civil authority *that prohibits access to the described premises* or to a 'newly acquired location' due to direct physical loss of or damage to property."   Courts interpreting similar provisions recognize that "generally, coverage under the civil authority section is only available when access is *completely prohibited*." *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, No. A04-1963, 2005 Minn. App. LEXIS 585, at *10 (Minn. Ct. App. June 7, 2005) (emphasis added). "[W]here the action of a civil authority merely hinders access to the covered premises, without completely prohibiting access, federal courts have held that such action is not covered[.]" *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-cv-02391, 2010 U.S. Dist. LEXIS 67092, at *9-10 (M.D. Pa. July 6, 2010); *S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140-41 (10th Cir. 2004) (collecting cases denying coverage "where the civil authority order had only the indirect effect of restricting or hampering access to the business premises.").

Consistent with this, "courts in Florida have held that access is not 'prohibited' where customers can still purchase delivery or take-out." *Rococo Steak, LLC*, 2021 U.S. Dist. LEXIS 15191, at *15 (*citing Raymond H Nahmad*, 2020 U.S. Dist. LEXIS 203838, which held that access was not prohibited where take-out and delivery were available); *see also, e.g.*, *El Novillo*, 2020 U.S. Dist. LEXIS 233994, at *19-21 (citing to the same Executive Orders Plaintiff does here, and explaining that "these orders

did not prohibit customer access to Plaintiffs' properties, but merely restricted access to indoor dining, while the restaurants remained open for delivery and takeout. Given these deficiencies, the Court finds that Plaintiffs fail to allege coverage under the Civil Authority Additional Coverage section"). As recognized in *El Novillo*, and as the orders referenced in Plaintiff's Complaint make clear, access to Plaintiff's restaurant was not "prohibited" due to orders of civil authority. While Plaintiff's ability to conduct business was temporarily limited by the orders—allowing it to conduct only carry-out and delivery service—access to Plaintiff's business was never completely prohibited. Plaintiff's claim for Civil Authority coverage was, therefore, properly denied for this reason as well.

### C. The Policy's Exclusions Bar Coverage, Anyway.

Finally, even if Plaintiff could meet its initial burden of proving that its claims are within the Policy's scope of coverage, the Policy's exclusions would still preclude Plaintiff from recovering in this case. *See Fla. Farm Bureau Gen. Ins. Co. v. Ins. Co. of N. Am.*, 763 So. 2d 429, 432 (Fla. 5th DCA 2000) ("[T]he applicability of policy exclusions contained in a policy . . . may be raised by a motion to dismiss when the allegations of the complaint clearly show that the exclusions do apply.").

To begin, the Policy's Acts or Decisions Exclusion excludes "loss or damage caused by or resulting from . . . Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." (Causes of Loss

26

Special Form, § B.3(b).)  To the extent Plaintiff alleges the Governor's Executive Orders caused its losses, those allegations boil down to an argument that the acts or decisions of a "governmental body" caused Plaintiff's damages and, consequently, this exclusion applies.

Second, coverage is excluded "loss of use," "loss of market," or "Any other consequential loss."  (*Id.* §§ B.2(b). B.4a(5).)  To the extent Plaintiff contends it was the occurrence of the pandemic or a lack of clientele that caused its economic losses, coverage is also excluded.  As Florida courts have recognized when interpreting policies that "specifically exclude[] loss or damage caused by or resulting from consequential loss, delay, loss of use, or loss of market," to "the extent any loss claimed to be a loss of business income . . . was not lost as a direct result of [the covered cause of loss] but rather as a consequence of any other reason, then such loss is excluded from coverage and there can be no recovery . . . for such loss." *Dictiomatic, Inc. v. U.S. Fid. & Guar. Co.*, 958 F. Supp. 594, 604 (S.D. Fla. 1997); *see also, e.g.*, *N.H. Ins. Co. v. Hill*, 516 F. App'x 803, 805-806 (11th Cir. 2013) (interpreting Florida law and enforcing similar clause); *Batram, LLC v. Landmark Am. Ins. Co.*, 864 F. Supp. 2d 1229 (N.D. Fla. 2012) (same).  Indeed, the Middle District of Florida recently applied these exclusions to bar coverage in a similar case brought against SOIC.  *Harvest Moon*, 2020 U.S. Dist. LEXIS 189390, at *15 (M.D. Fla. Oct. 9, 2020).

## CONCLUSION

Plaintiff's Declaratory Judgment centers on its belief that "Defendants" wrongly rejected its claim for Business Income, Extra Expense, and Civil Authority coverage. Auto-Owners is not a party to the Policy, so it cannot be held liable. And SOIC cannot be held liable because Plaintiff's alleged damages fall outside the scope of the Policy's coverage provisions and fall under the Policy's exclusions. Plaintiff's Complaint should therefore be dismissed with prejudice.

Dated: April 5, 2021                    Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
4301 West Boy Scout Boulevard
Suite 400
Tampa, FL 33607
Tel.: (813) 509-2613
Fax: (813) 286-2900
Primary e-mail: mark.tinker@csklegal.com
Secondary: kathryn.lopez@csklegal.com
*Attorneys for Auto-Owners & Southern-Owners*

By:
Mark D. Tinker, Esq., B.C.S.
Florida Bar No.: 0585165

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(F), I hereby certify that the foregoing motion and memorandum contains 6,918 words.

Dated:  April 5, 2021         By:
Mark D. Tinker, Esq., B.C.S.
Florida Bar No.: 0585165

## REQUEST FOR ORAL ARGUMENT

In accordance with Local Rule 7.1(K), Defendants Southern Owners Insurance Company and Auto-Owners Insurance Company respectfully request oral argument, which is expected to take no longer than one hour.

Dated:  April 5, 2021       By:

                                             Mark D. Tinker, Esq., B.C.S.
                                             Florida Bar No.: 0585165

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing was filed with the Clerk of Court using the CM/ECF system, which will automatically serve a copy via transmission of Notices of Electronic Filing on all counsel of record, on this April 5, 2021.

Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
4301 West Boy Scout Boulevard
Suite 400
Tampa, FL 33607
Tel.: (813) 509-2613
Fax: (813) 286-2900
Primary e-mail: mark.tinker@csklegal.com
Secondary: kathryn.lopez@csklegal.com
*Attorneys for Auto-Owners & Southern-Owners*

By:

Mark D. Tinker, Esq., B.C.S.
Florida Bar No.: 0585165

076799.000999  4822-2409-6474.2

30