## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

TL GOODSON, LLC,

      Plaintiff,

v.                                  Case No. 3:21-cv-178-MCR-EMT

SOUTHERN-OWNER INSURANCE
COMPANY, et al.,

      Defendants.

_____/

## <u>ORDER</u>

Plaintiff TL Goodson, LLC, filed suit against Defendants Southern-Owners Insurance Company and Auto-Owners Insurance Company, seeking a declaratory judgment as to whether it has insurance coverage for business interruption losses resulting from governmental closures during the COVID-19 pandemic.[1]  Defendants move to dismiss the Complaint, arguing that it fails to state a claim, *see* Fed. R. Civ. P. 12(b)(6), and that TL Goodson lacks standing to sue Auto-Owners, *see* Fed. R. Civ. P. 12(b)(1).  ECF No. 5.  TL Goodson opposes the motion but stipulates to the dismissal of Auto-Owners without prejudice.  ECF No. 7.  By TL Goodson's stipulation, Auto-Owners is dismissed without prejudice and without a court order.

---

[1] The Court has diversity jurisdiction.  *See* 28 U.S.C. § 1332.

*See* Fed. R. Civ. P. 41(a)(1)(A)(i).  On careful review, the motion to dismiss for failure to state a claim is due to be granted as to Southern-Owners.

## I.  Background

TL Goodson is the owner and operator of Beef O'Brady's, a family sports restaurant located in Escambia County, Florida.  It alleges that the restaurant suffered losses when it was forced to close during the COVID pandemic due to a series of executive orders issued by the Governor of Florida and COVID-19 infections among its own employees.

On March 1, 2020, Florida Governor Ron DeSantis issued Executive Order 20-51 directing state health officials to declare a public health emergency due to COVID-19.  On March 9, 2020, Executive Order 20-52, acknowledged the presence of COVID-19 in the state of Florida, and on March 17, 2020, Executive Order 20-68 restricted restaurants to 50% capacity, requiring restaurants to maintain six feet of distance between groups and limit groups to ten customers.  Restaurants were also required to screen employees for COVID-19 symptoms and prohibit them from entering the premises under certain conditions.  By March 20, 2020, Executive Order 20-71 required all restaurants and bars to suspend on-premises food services, although businesses were permitted to continue delivery and take-out services.  On April 1, 2020, Executive Order 20-91 ordered the closure of all non-essential services due to the escalating rate of COVID-19 infections in Florida.

Case No. 3:21-cv-178-MCR-EMT

TL Goodson complied with these Executive Orders, restricting on-premises activity and dining at Beef O'Brady's as of March 17, 2020, and closing its doors to on-premises dining from March 20, 2020, through May 2020, when limited re-openings were permitted, in accordance with governmental guidance.   On two occasions in June 2020, employees were diagnosed with COVID-19, and on July 4, 2020, the business shut down operations for 9 days while management and staff were tested for COVD-19.   The restaurant reopened on July 13, 2020, after hiring a private company to sanitize and clean the premises.

TL Goodson purchased a commercial property insurance policy issued by Southern-Owners that was effective from February 14, 2020, through February 14, 2021.   *See* ECF No. 1–1 (the "Policy").   In relevant part, the Policy provides protection for "direct physical loss of or damage to Covered Property" when the cause results from  a "Covered Cause of Loss."   ECF No. 1–1 at 118.   TL Goodson describes it as an "all risk" policy based on the expansive scope of coverage stated in the "Causes of Loss-Special Form," which defines "Covered Causes of Loss" loss as meaning "Risks of Direct Physical Loss" unless the loss is specifically excluded or limited by the Policy.   ECF No. 1-1, at 35.   The Policy includes a Business Income and Extra Expense special endorsement that pays "the actual loss of Business Income" sustained "due to the necessary suspension of your 'operations' during the 'period of restoration.'"   ECF No. 1-1, at 47.   The Policy also pays for "Extra

Expense," which are costs the insured may occur during a "period of restoration." *Id.* And, the actual loss of business income plus extra expenses sustained are also covered when "caused by action of civil authority that prohibits access to the described premises . . . due to direct physical loss or damage to property other than at the described premises . . . caused by or resulting from any covered Cause of Loss." *Id.* Several express exclusions are stated in the Policy, one of which applies to a governmental action amounting to the "[s]eizure or destruction of property by order of governmental authority." *Id.* at 35.

On July 30, 2020, TL Goodson filed a claim for coverage under the Policy, seeking payment for business losses and extra expenses incurred due to its business interruptions and cleaning costs caused by COVID-19 and the related government-mandated closures. On August 26, 2020, the claim was denied based in part on the Policy's requirement of direct physical loss or damage to property, which did not occur, and stating, to the extent a government seizure was claimed, losses caused by such action are expressly excluded. TL Goodson then filed this suit to obtain coverage, and Southern-Owners moved to dismiss.

## II.    Standard of Review

Federal pleading rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not detailed allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The court accepts

the well pled allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). To survive a motion to dismiss, a complaint must "include sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The "plausibility standard" requires a showing of "more than a sheer possibility" that the defendant is liable on the claim. *Id.* at 678. Legal "labels and conclusions" will not suffice, and legal conclusions devoid of any factual support are not entitled to an assumption of truth. *Id.* (quoting *Twombly*, 550 U.S. at 555). Instead, a plaintiff must allege enough factual support to raise the right to relief above the level of speculation. *Twombly*, 550 U.S. at 555. Additionally, in this context, the court considers only the pleadings, attached exhibits, or documents incorporated into the complaint by reference. *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

## III.   Discussion

The parties agree that the substantive law of Florida applies. *See Mid-Continent Cas. Co. v. Am. Pride. Bldg. Co.*, 601 F.3d 1143, 1148 (11th Cir. 2010) (applying Florida law in diversity where the parties do not dispute that the forum state law applies). The interpretation of an insurance contract under Florida law is a question of law for the court, construing the policy in its entirety consistent with

the expressed intent of the parties. *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985). Thus, the analysis begins with "the plain language of the policy, as bargained for by the parties." *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002) (citing *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000)). If the language is unambiguous, the analysis ends. *Id.* To the extent the language of the policy is unclear or ambiguous, it must be construed against the insurer. *See Gulf Tampa Drydock,* 757 F.2d at 1174. A policy is only unclear or ambiguous, however, if it can be reasonably interpreted in more than one way—one interpretation providing coverage and the other excluding or limiting coverage. *See id.* at 1174–75 (citing *Blue Shield of Florida, Inc. v. Woodlief*, 359 So.2d 883, 884 (Fla. 1st DCA 1978)); *see also Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). The mere fact that analysis is required to interpret a policy, does not by itself constitute ambiguity. *See Gulf Tampa Drydock Co.*, 757 F.2d at 1174.

The party claiming insurance coverage bears the burden to prove that coverage exists under the policy. *See Mama Jo's Inc. v. Sparta Ins. Co*., 823 F. App'x 868, 878 (11th Cir. 2020) (citing *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. 3rd DCA 1977)), *cert. denied*, 141 S. Ct. 1737 (2021). Even under an "all

risk policy," coverage does not necessarily extend to "every conceivable loss."[2] *Sebo v. American Home Assurance Co., Inc.*, 208 So.3d 694, 696-97 (Fla. 2016). The insured still bears the burden to prove "that the insured property suffered a loss while the policy was in effect," *Jones v. Federated Nat'l Ins. Co.*, 235 So. 3d 936, 941 (Fla. 4th DCA 2018), and that the property suffered a type of loss that is covered, *see Mama Jo's*, 823 F. App'x at 878.

As noted above, the plain language of the Policy provides protection for "direct physical loss of or damage to Covered Property" when the cause results from a "Covered Cause of Loss."  ECF No. 1–1 at 118.   And "Covered Causes of Loss" loss are defined broadly to mean "Risks of Direct Physical Loss" unless the loss is specifically excluded or limited.  ECF No. 1-1, at 35.

TL Goodson argues that it has suffered a covered loss because the policy provides all risk coverage arising from a direct physical loss.  Because "risks of direct physical loss" and the terms "loss" and "damage" are not defined in the policy,

---

[2] The Eleventh Circuit has stated that "all-risk insurance policies cover all 'fortuitous' losses, 'unless the policy contains a specific provision expressly excluding the loss from coverage.'"  *Great Lakes Reinsurance (UK) PLC v. Kan-Do, Inc.*, 639 F. App'x 599, 601 (11th Cir. 2016) (quoting *Dow Chem. Co. v. Royal Indem. Co.*, 635 F.2d 379, 386 (5th Cir. Jan. 26, 1981)).  The business interruption coverage at issue here does not apply to all "fortuitous" losses but rather states "Covered Causes of Loss means Risks of Direct Physical Loss" unless excluded.  However, courts have also described policies such as the one at issue here as "all risk" policies because of their expansive scope of coverage.  *See, e.g., Ascent Hospitality Mgmt. v. Employers Ins. Co. of Wausau*, No. 21-11924, 2022 WL 130722 (11th Cir. Jan. 14, 2022); *Mama Jo's Inc. v. Sparta Ins. Co.,* 823 F. App'x 868, 871 (11th Cir. 2020) (addressing an "all risk" policy that defined "Covered Causes of Loss" as "Risks of Direct Physical Loss unless the loss is" excluded or limited), *cert. denied*, 141 S. Ct. 1737, 209 L. Ed. 2d 504 (2021).

TL Goodson argues that the words are given their common meanings.  As such, it contends "loss" could be the "diminution of value" that occurred from the inability to use the property due to closures or the presence of virus.  ECF No. 7 at 9–10 (citing BLACK'S LAW DICTIONARY (11th ed. 2019)).  Alternatively, TL Goodson argues there is ambiguity in the terms.  The Court disagrees with both arguments.

The Eleventh Circuit has recently addressed the same language, albeit in unpublished opinions,[3] and rejected these arguments, holding instead that the terms are not ambiguous and that actual physical damage is required for coverage.  *See Mama Jo's,* 823 F. App'x at 879 (applying Florida law); *see also Ascent Hospitality Mgmt. Co. v. Employers Ins. Co. of Wausau*, No. 21-11924, 2022 WL 130722 (11th Cir. Jan. 14, 2022) (applying New York law); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) (applying Georgia law).  In *Mama Jo's*, the court applied Florida law to a restaurant's claim of business loss resulting from the impacts of dust due to nearby road construction.  823 F. App'x at 871.  The Eleventh Circuit explained that Florida courts construing the phrase "direct physical loss or damage" have concluded that words "direct" and "physical" *both* modify the term "loss;" thus, actual damage is required.  *Id.* at 879 (quoting *Homeowners Choice Prop. & Cas. v. Maspons*, 211

---

[3] While unpublished Eleventh Circuit opinions are not binding, they may be considered as persuasive authority.  *See* 11th Cir. R. 36-2; *see also United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000).

So. 3d 1067, 1069 (Fla. 3d DCA 2017)).  The court concluded, "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical'" within the meaning of Florida law.  *Id.*  The instant case presents a comparable situation in that there is no allegation of physical property damage other than the presence of virus, which merely required cleaning.

In *Ascent* and *Gilreath*, the Eleventh Circuit again addressed the same language but on facts directly comparable to this case.  Applying New York law, the court concluded in *Ascent* that plain language of a policy covering "direct physical loss or damage" clearly and unambiguously requires physical damage for coverage to apply, and therefore, losses to hotels and restaurants from government pandemic-related closures, as opposed to any physical damage, were not covered.  *See* 2022 WL 130722, at **2–3 (concluding, "because a [virus] contaminated location can be immediately restored to its previous state by disinfecting and cleaning" it "does not inflict direct physical damage" to property).  Similarly in *Gilreath*, the court noted that in Georgia, courts have construed the "direct physical loss" language as having a common meaning that requires an actual change in the property. 2021 WL 3870697, at *2.  Thus, the court found the Gilreath dental practice's suit was properly dismissed for failure to state a claim for coverage based on losses attributable to COVID-19, which did not cause direct physical loss or damage to the property.  *See id.*  Aside from the application of New York law in *Ascent* and Georgia law in

*Gilreath*, nothing about the cases or the law in those states, as compared to Florida law, requires a different result here. *See Homestar Fin'l Group, Inc. v. Landmark Am. Ins. Co*., Case No. 3:21cv2603-TKF-MJF, 2022 WL 224849, at *2 (N.D. Fla. Jan. 24, 2022) (noting "Florida law is in accord with both New York law and Georgia law with respect to the meaning of the phrase "direct physical loss or damage"").

Moreover, there are now numerous decisions in Florida and elsewhere, and courts have "almost uniformly held that economic losses resulting from state and local government orders closing businesses to slow the spread of COVID-19 are not covered under 'all risk' policy language identical to that in this case because such losses were not caused by direct physical loss or damage to the insured property." [4] *Homestar Fin'l Group,* 2022 WL 224849, at *1 (quoting *Emerald Coast Rests., Inc. v. Aspen Specialty Ins. Co.,* Case No. 3:20cv5898-TKW-HTC, 2020 WL 7889061, at *2 (N.D. Fla. Dec. 18, 2020), *appeal docketed*, No. 21-10190 (11th Cir. Jan. 19,

---

[4] Numerous district courts in Florida have now concluded that "the mere presence of the virus on the physical structure of the premises does not amount to 'direct physical loss,'" but requires only cleaning, and have dismissed for failure to state a claim. *Mena Catering, Inc. v. Scottsdale Ins. Co*., 512 F. Supp. 3d 1309, 1318 (S.D. Fla. 2021); *see, e.g., Atma Beauty, Inc. v. HDI Glob. Specialty SE,* No. 1:20-CV-21745, 2021 WL 4170476, at *4 (S.D. Fla. Sept. 13, 2021); *Island Hotel Properties, Inc. v. Fireman's Fund Ins. Co*., 512 F. Supp. 3d 1323 (S.D. Fla. 2021); *Rococo Steak, LLC v. Aspen Specialty Ins*. Co., 515 F. Supp. 3d 1218 (M.D. Fla. 2021); *R.T.G. Furniture Corp. v. Hallmark Specialty Ins. Co*., No. 8:20-cv-2323-T-30AEP, 2021 WL 686864 (M.D. Fla. Jan. 22, 2021); *Prime Time Sports Grill, Inc. v. DTW 1991 Underwriting Ltd.*, 508 F. Supp. 3d 1170 (M.D. Fla. 2020); *El Novillo Restaurant v. Certain Underwriters at Lloyd's, London*, 505 F. Supp. 3d 1343 (S.D. Fla. 2020); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 489 F. Supp. 3d 1303 (M.D. Fla. 2020); *see also* ECF No. 11 (collecting cases as supplemental authority).

Case No. 3:21-cv-178-MCR-EMT

2021)).   The Court finds these cases and the Eleventh Circuit's unpublished discussions in *Ascent* and *Gilreath* persuasive.[5]

TL Goodson argues that courts have misinterpreted and misapplied the holding of *Mama Jo's*, which was based on a restaurant experiencing decreased business as opposed to interrupted business.   The Court is not convinced because that distinction was not significant to the Eleventh Circuit's plain language interpretation of the policy.   TL Goodson also argues that tangible structural damage is not required to establish "direct physical loss" under Florida law.   The Court has considered the cases cited by TL Goodson to support this argument and finds them factually distinguishable; each involved a covered cause of loss that was considered physical damage needing repair, contrary to the allegations of this case.[6]   The Court agrees with the plain language interpretation set out by the Eleventh Circuit and

---

[5] While some courts across the country have ruled otherwise, none applied Florida law, and the Court declines to follow them.   *See, e.g., Southern Dental Birmingham LLC v. Cincinnati Ins. Co.*, 527 F. Supp. 3d 1341 (N.D. Ala. 2021) (applying Alabama law); *Blue Springs Dental Care, LLC v. Owners Insurance Co.*, 488 F. Supp. 3d 867 (W.D. Mo. 2020) (applying Missouri law).

[6] *See Fisher v. Certain Interested Underwriters at Lloyds*, 930 So. 2d 756, 759 (Fla. 4th DCA 2006) (finding mold damage was directly caused by the discharge of water, a covered risk, and not merely the consequence of the water discharge); *Widdows v. State Farm Fla. Ins. Co.*, 920 So. 2d 149 (Fla. 5th DCA 2006) (finding an abnormality in a drainage pipe constituted a "physical loss," which could result in coverage); *Azalea, Ltd. v. Am. States Ins. Co.*, 656 So. 2d 600 (Fla. 1st DCA 1995) (finding direct damage to covered property when an unknown chemical was dropped into the sewage treatment process, destroying a bacteria colony that was an integral part of the treatment facility and requiring repair); *Central Cold Storage, Inc. v. Lexington Ins. Co.*, 452 So. 2d 1014, 1015 (Fla. 3d DCA 1984) (finding, under a policy that insured a cold storage warehouse *and its contents*, that an ammonia leak within the refrigeration system was covered because it caused damage to the insured stored goods and was considered external to the goods in storage).

Case No. 3:21-cv-178-MCR-EMT

numerous other district courts in Florida cited above.  As in those cases, absent a plausible factual allegation of direct and physical loss to trigger coverage for business interruption losses and extra expense, the Complaint here fails to state a claim.

TL Goodson also argues that the Compliant states a claim for Civil Authority coverage.  Again, the Court disagrees.  While the policy provides coverage for expenses incurred from the actions of a civil authority, that coverage is likewise contingent on a covered cause of loss damaging property—specifically, there must be damage to property other than at the described premises.  *See* ECF No. 1–1 at 47. There is no allegation of damage to nearby off the premises property causing civil authorities to prohibit access to TL Goodson's business.  *See Gilreath*, 2021 WL 3870697, at *2.  Therefore, the claim alleged is not within the scope of coverage.

Because TL Goodson has not alleged facts showing that its property was directly and physically damaged, there is no need to consider the policy exclusions. *See Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732 (Fla. 2002) (noting policy exclusions are "not at all relevant until it has been concluded that the policy provides coverage for the insured's claimed loss").  Also, because there is no suggestion that the failure to state a claim in this instance could be cured by amendment, dismissal is with prejudice.  *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (leave to amend not required where amendment is

futile); *Rococo Steak, LLC v. Aspen Specialty Ins. Co*., 515 F. Supp. 3d 1218, 1225 (M.D. Fla. 2021) (dismissing with prejudice for failure to state a claim based on COVID-19 restrictions, finding amendment would be futile).

Accordingly:

1.     TL Goodson has stipulated to the dismissal of Auto-Owners without prejudice prior to an answer being filed, which operates without a court order pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

2.     The Motion to Dismiss, ECF No. 5, is **GRANTED** and the case is **DISMISSED with prejudice** as to Defendant Southern-Owners.

3.     The Clerk is directed to enter judgment accordingly and close the file.

**DONE AND ORDERED** this 14th day of March 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**